UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

**ANDREA C. SCHMITH,**

     **Plaintiff,**

v.                                  **Case No.  2:07-CV-55-FtM-JES-DNF**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

     **Defendant.**

_____/

## OPINION AND ORDER[1]

The  Plaintiff filed an application for  a period of disability and disability insurance benefits under a protected filing date of May 14, 2002, alleging disability as of June 30, 2001. The claim was denied initially and upon reconsideration.[Tr. 30-31, 34-35].  On February 11, 2005,  a hearing was held before Administrative Law Judge Francis Ayer. [Tr.. 456].  On August 22, 2005, Administrative Law Judge Ayer issued his decision denying the Plaintiff's application. [Tr. 18-25]  The Appeals Council denied the Plaintiff's Request for Review on December 11, 2006, [Tr. 6-8] making the ALJ's decision the final decision of the Commissioner.   For the reasons set out herein, the decision is **AFFIRMED.**

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

## I.    SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW.

The law defines disability as the inability to do any substantial gainful activity by reason

---

[1]    Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated December 21, 2007.  (Doc.# 19).

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On May 14, 2002, (a protected filing date) the Plaintiff filed her application for Disability Insurance Benefits alleging disability beginning June 30, 2001. The Decision of ALJ Ayer, dated August 22, 2005, denied the Plaintiff's claim for benefits. (Tr. 18-25). At Step 1, the ALJ found the Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. (Tr. 18). At Step 2, the ALJ found that the Plaintiff has had the following severe physical impairments, as per the Regulations: fibromyalgia, systemic lupus erythematosus (SLE) and partial complex seizure disorder. The ALJ found the Plaintiff's cancerous goiter and fractured right [second] toe to be non-severe impairments, as these conditions have not and could not have been expected to last the requisite 12 months. (Tr. 22). At Step 3, the ALJ found that during the period in question, the Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments described in Appendix 1, Subpart P, Regulation No. 4. The ALJ also did not find Plaintiff's testimony fully credible regarding her limitations and that the Plaintiff has the residual functional capacity to perform a limited range of light work activities. [Tr. 25] . At Step 4, the ALJ determined Plaintiff was able to perform her past relevant work as a secretary,

sales clerk, dialysis technician, bookkeeper and sacristan. The ALJ found the testimony of the impartial vocational expert to be credible and that the Plaintiff retained the residual functional capacity to perform her past relevant work in reaching his decision. [Tr. 24]. Accordingly, the ALJ found the Plaintiff not disabled at step five of the sequential evaluation. 20 C.F.R. §§416.920(a)(4) and (g).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Walden v. Schweiker*, 672 F.2d 835, 838-9 (11th Cir. 1982).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.     REVIEW OF FACTS

The Plaintiff was born in  on May 5, 1948, and was fifty-eight (58) years old at the time of the Administrative Hearing.  [Tr. 61].   The Plaintiff has a high school education and worked as a secretary, sales clerk, dialysis technician, bookkeeper and sacristan. [Tr. 67, 72].      The Plaintiff received treatment from neurologist William A. Holt, D.O., in July 1997 for seizure disorder.  The Plaintiff reported "spells" that were accompanied by severe, paroxysmal feelings of panic, hyperventilation and near loss of consciousness.  A neurological electroencephalogram (EEG) was normal.  The doctor diagnosed transient spells and partial complex seizures.  The Plaintiff was placed on Depakote and was "quite pleased" with the results.  After tremors developed in April of 2001, the Plaintiff was placed on Zonegram.  She was then switched to Keppra.  The evidence indicates that the Plaintiff's seizure disorder is well-controlled when the Plaintiff consistently takes her medications. [Tr. 20].

The Plaintiff alleged an onset date of June 30, 2001.  The Plaintiff testified that she had lupus, petit mal seizures, thyroid cancer, and major depressive disorder. [Tr. 459-460].   The Plaintiff alleges pains in her legs, joints and back.  Further, the Plaintiff stated that she had arthritis in her back, hands and legs. [Tr. 462].   The Plaintiff said she has great fatigue, lapses in concentration, severe joint and muscle pain, and  forgetfulness.  The Plaintiff  is  in  pain when sitting, standing, walking, or even lying in bed.  The Plaintiff cannot write or be on the computer for more than 15 minutes due to hand pain.  The Plaintiff testified that she has tried Tylenol PM, Bextra, Plaquenil and other medications which have not helped. [Tr. 19].

-4-

The Plaintiff completed a report regarding her activities of daily living.  The Plaintiff reported she prepares meals five times per week (mostly frozen foods); she also does cleaning, vacuuming, dusting and laundry (a different chore a day).  Also, the Plaintiff felt that her condition has  affected her personal grooming habits.  The Plaintiff said  she  gets along well with people in authority and the public in general, and that she is able to remember things and follow written or spoken instructions. [Tr. 65 - 91].

On February 4, 1999, the Plaintiff underwent an esophagogastroduodenoscopy.  The Plaintiff was recommended for this procedure due to dysphagia and a strong family history of colon cancer.  The Plaintiff had a normal appearing esophagus.  The duodenal bulb and the second portion of  the duodenum were normal and the colonoscopy was unremarkable. [Tr. 117].   The same procedures were  performed on May 3, 2001, by Jaime Torner, M.D., and again the Plaintiff's results were normal and the colonoscopy was unremarkable. [Tr. 123].

The  Plaintiff  was  seen by David L. McAtee, D.O., for a variety of conditions, including fatigue.  An anti-nuclear antibody (ALNA) test was ordered due to the Plaintiff's musculoskeletal joint aches and pains.  The test was positive but the sed rate was normal.  A bone density scan revealed osteopenia/osteoporosis.  The Plaintiff was prescribed Vioxx and advised to increase her calcium intake. [Tr. 20].

Dr. McActee referred the Plaintiff in July of 2001 to Sash S. Seshadri, M.D., because he suspected that the Plaintiff might have lupus. The doctor noted that the Plaintiff reported she was moderately active in day-to-day activities. The Plaintiff's examination showed 18 out of 18 trigger points; however, there was no synovitis, and only mild tenderness in the first CMC joint bilaterally and some tenderness in the thumb. [Tr. 20].

On August 8, 2001, the Plaintiff underwent an electroencephalogram. The Plaintiff was noted to be a "53-year old female with a history of seizures." There were no "neuro-behavioral manifestations of seizure activity documented by the technician during the tracing." The EKG monitor demonstrated normal sinus rhythm. "IMPRESSION: Normal EEG for age." [Tr. 125].

In July of 2002, the Plaintiff had a closed fracture of the right second toe which required open reduction and internal fixation. In January 2003, the Plaintiff was prescribed Nexium for a gastroesophageal reflux problem. In late 2003, an ultrasound of the thyroid revealed a small hypoechoic colloid cyst. The Plaintiff underwent a thyroidectomy when the cyst was deemed to be cancerous.

The Plaintiff was referred back to Kala Seshadri, M.D., in September of 2002 by the State Agency Office of Disability Determinations for a consultative physical examination. The Plaintiff offered her medical history and advised of her continued pain. The Plaintiff was observed with a rash on the truck of her body. The examination revealed no acute inflammation of any of her joints, no evidence of lupus and the Plaintiff had full range of motion in all joints with negative straight leg raises.

The Plaintiff was also examined by Ronald J. Forgus, Ph.D., in September 2002 at the request of the State Agency Office of Disability Determinations for any mental impairments. The doctor noted that the Plaintiff had driven herself to the office and there were no signs of motor skill or gait deficiencies. The Plaintiff was oriented, able to recall items and denied any appetite disturbances, auditory or visual hallucinations. On the Wechsler Memory Scale (WMS-III), the Plaintiff showed no signs of memory or attention/concentration problems. The Plaintiff's Global Assessment of Functioning (GAF) score was 45 and so a diagnosis of mild major depressive disorder was offered.

The Plaintiff was seen by Raymond A. Johnson, M.D., on March 2, 2004, for anxiety, worry and episodes of crying. Dr. Johnson found the Plaintiff to be fully oriented, with clear speech, no sign of memory impairment and with a cooperative attitude. The Plaintiff's GAF score at that visit was 75. The Plaintiff continued with a diagnosis of major depressive disorder, recurrent, in full remission. [Tr. 291-292].

## III.  SPECIFIC ISSUES AND CONCLUSIONS OF LAW:

**A.    THE ALJ FOUND THAT THE PLAINTIFF'S SEIZURE DISORDER WAS A SEVERE IMPAIRMENT AT STEP TWO ; INCLUDED THAT IMPAIRMENT IN THE RFC ASSESSMENT, AND INCLUDED THAT IMPAIRMENT IN THE HYPOTHETICAL TO THE VE.  THE ALJ ERRED BY NOT ACCEPTING THE OPINION OF THE VE.**

On the record, Plaintiff's counsel argues that the Plaintiff's condition of systemic lupus erythematosus [SLD] satisfies section 14.02 of the Listings. The record shows that on examination the Plaintiff rarely showed inflammation or swelling noted in any joints, that her

range of motion has routinely been full and there has been no joint instability. Further, during the relevant time period , the Plaintiff has been able to drive, prepare meals, shop, do household chores and the Plaintiff testified that she gets along well with the public and people in authority. The Plaintiff is also able to remember things and follow instructions. The ALJ determined that the Plaintiff's reports and testimony as to her pain, symptoms and limitations are less than credible because they suggest a residual functional capacity more limiting than that supported by the medical and non-medical evidence of record. [Tr. 23].

The Plaintiff's neurological condition (seizure disorder) fails to satisfy section 11.00 of the Listings. The Plaintiff's seizure disorder is not greater than once a week and has been documented as being under fairly good control throughout the record. The Plaintiff was seen on January 18, 2006, by Mark Browning, P.A. (for Liliana Montoya, M.D.) on a follow-up visit. The Plaintiff was taking Keppra 500 mg. daily and Klonopin at 0.5 mg. at night. The notes reflect that "for the most part her condition is under excellent control." The Plaintiff advised that she was having "flushing sensations". She was advised that "clinically this is not a seizure, although it may be the aura of seizure". She was counseled that if "it persists or indeed progresses, we may need to make some adjustments to her anti-convulsant medication". [Tr. 386].

The ALJ afforded proper weight to the various medical opinions of record. The greatest weight being assigned to the Plaintiff's treating sources, including the records of Dr. McAtee, Dr. Seshadri, Dr. Holt and Dr. Johnson. The ALJ appropriated the least weight to the opinions of the State Agency consultations as to the Plaintiff's physical residual functional capacity and mental limitations. [Tr. 23].

After reviewing the entire record in this case, the ALJ determined that the Plaintiff can perform a limited range of light work activities.  The Plaintiff can lift/carry 20 pounds occasionally and ten pounds frequently; stand/walk for about six hours in an eight-hour workday; and, sit for about six hours in an eight-hour workday.  The Plaintiff is not able to climb ladders/ropes/scaffolds, and can only occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl.

The ALJ relied on the testimony of vocational expert,  Joyce Ryan.  The Plaintiff's past work  history  was as a secretary, which is considered sedentary, skilled work; a sales clerk, which is considered light, semi-skilled work; a dialysis technician, which is considered light, skilled work; and, as a bookkeeper which is considered light skilled work.  The vocational expert also testified  that the Plaintiff  had  also worked as a sacristan and although it  is a job that is not cataloged in the DOT, it is a job consistent with light, semi-skilled work. [Tr. 472].

Ms.  Ryan,   the   vocational  expert,  testified that based on the Plaintiff's residual functional capacity,  her age, education  and past work experience, the Plaintiff would be capable of performing all of the past work she has performed.   When asked if the Plaintiff needed a sit-stand option to perform these jobs, the vocational expert replied that she would have to "rule out the dialysis tech, the sacrastan, and the sales clerk job", but that the Plaintiff would still be able to continue in a  bookkeeper or secretarial position.   [Tr. 473-474].  Ms. Ryan  further  testified  that if there were many clerical jobs available for the Plaintiff at the light  level of exertion which combine sitting and standing equally throughout the day. [Tr. 478].

The ALJ raised the issue of the Plaintiff's having a seizure in a working atmosphere and how that would possibly affect that person's ability to maintain a job. Ms. Ryan testified that an individual with a seizure disorder would cause a disruption in the workplace which might preclude working for that employer. [Tr. 480-481]. Additionally, Ms. Ryan stated, "And I don't know if you want to classify it as employer prejudice. It's just – it's productivity that's lost. I don't know how else to, you know, put it in vocational terms". [Tr. 482-483]. In this case, the ALJ did not find this limitation credible, because the Plaintiff's seizure disorder was well-controlled with medication. [Tr. 20, 334, 336, 379, 381]. 20 C.F.R. 404.1529(c)(3)(iv) (noting that the effectiveness of medication is a factor to consider when evaluating a claimant's subjective complaints).

Plaintiff "bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of [her] claims." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Specifically, it is the Plaintiff's burden to establish a prima facie case by showing that her impairments prevent her from performing her former work. *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Circ. 1991). In the instant case, Plaintiff failed to meet her burden of proving that she could not perform her past relevant work as a secretary, sales clerk, dialysis technician, bookkeeper, and sacristan. [Tr. 25]. Because the Plaintiff was unable to demonstrate that she could not return to her former work, the ALJ found that the Plaintiff was not disabled. 20 C.F.R. §§ 404.1520(f) (2007).

**B.     THE ALJ ERRED IN FINDING THAT THE PLAINTIFF
            DOES NOT HAVE ANY MENTAL IMPAIRMENT**

The record shows substantial evidence to support the ALJ's finding that the Plaintiff did not have a severe mental impairment. [Tr. 22].  A severe impairment is an impairment which significantly limits a claimant's physical or mental abilities to do basic work activities.  20 C.F.R. § 404.1520(c); see also 20 C.F.R. § 404.1521(a) (defining a non-severe impairment); Bridges v. Bowen, 815 F.2d 622, 625 (11ᵗʰ Cir. 1987) ("An impairment can be considered as not severely only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.")

Basic mental work activities include understanding, carry out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 404. 1521(b)(3)-(6).  An  impairment  also must be severe for at least twelve consecutive months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) 404.1509, 404.1520(c); Barnhart v. Walton, U.S. 212, 217 (2002).

The Plaintiff was unable to show that her mental condition interfered with her ability to work.   The   record shows that the Plaintiff's doctors noted that she had mild major depressive disorder, however they did not indicate that her mental condition caused any functional limitations. [Tr; 280-292, 321-33).]   The Eleventh Circuit has stated, "the mere existence  of these impairments does not reveal the extent to which they  limit her ability to

work or undermine the ALJ's determination in that regard." <u>Moore v. Barnhart</u>, 405 F. 3d 1208, 1213 n.6 (11th Cir. 2005).

The medical evidence in this case supports the ALJ's finding that the Plaintiff's depression was non-severe.  Dr. Johnson, the treating physician, noted consistently that the Plaintiff had good judgment and that she had the ability to maintain focus". [ 289-92, 321-33]. Dr. Forgus, who was the consultative psychologist, noted in September 2002 that the Plaintiff had  no memory or attention/concentration problems. [Tr. 208].   The Plaintiff revealed to Dr. Fogus that she did one household chore a day, exercised 4 times a week and shopped for groceries by herself. [Tr. 206].  Also, the Plaintiff had been seen by two of the state agency psychologists  who  reviewed the Plaintiff's records and found the Plaintiff did not have a severe mental condition. [Tr. 210-25, 245].

The Plaintiff failed to meet her burden of providing evidence to support her allegations of work related mental limitations.  42 U.S.C. § 423(d)(5)(A).  Further, the Plaintiff failed to prove that her mental condition prevented her from performing her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv), (f).   The ALJ properly considered all the evidence pertaining to the Plaintiff's mental condition and performed his duty as the trier of fact of weighing and resolving any conflicts in the evidence.  Substantial evidence supports the ALJ's finding the Plaintiff did not have a severe mental impairments.

**C.     THE ALJ  FAILED  TO CONSIDER    THE COMBINED EFFECT OF ALL OF PLAINTIFF'S IMPAIRMENTS IN FINDING  SHE  COULD  RETURN  TO  HER  PAST RELEVANT WORK**

The Plaintiff contends that the ALJ did not consider her obesity.  The Plaintiff is 5'3" and weighs 174 pounds.   According to the Plaintiff this translates into a body mass index of

30.8, which is defined as "obesity" and that obesity is a medically determinable impairment. The Plaintiff failed to show that she had a severe impairment due to obesity or that her weight affected her ability to work beyond the limitations found by the ALJ. At step two of the sequential evaluation process the ALJ found that Plaintiff had severe impairments of fibromyalgia, systemic lupus erythematosus and partial complex seizure disorder. 20 C.F.R § 1520(a)(4)(ii)(c). The ALJ then proceeded with the other steps of the sequential evaluation process. The ALJ found in Plaintiff's favor at step two, and the specific impairments listed in his step two finding are irrelevant. *Jamison v. Bowen* 814 F.2d 585, 588 (11th Cir. 1987); *Maziarz v. Secretary of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987) (noting that a failure to find that a particular impairment was severe was not reversible error because the ALJ found other severe impairments).

The ALJ limited the Plaintiff to light work and found that she could perform her past relevant work as a secretary or bookkeeper. Plaintiff notes that Social Security Ruling (SSR) 02-1p indicates obesity may be a severe impairment and my cause functional limitations. The Plaintiff, however, failed to show that her obesity was a severe impairment or that her obesity or condition in general actually caused additional limitations that prevented her from performing light work and her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (f); *Doughty v. Apfel*, 245 F.3d 1274 1278 (11th Cir. 2001).

The Plaintiff failed to prove that her condition caused additional limitations and the evidence does not support any additional limitations. The ALJ properly considered the evidence in assessing the Plaintiff's RFC, which encompassed all of the reasonable limitations she had on her ability to work. [Tr. 19-24].

The Plaintiff also contends that the ALJ erred in not relying on the Medical-Vocational Guidelines (GRIDS) to find her disabled.  At step four of the sequential evaluation process, the ALJ found that the Plaintiff could perform her past relevant work.  Because the Plaintiff can perform her past relevant work, the ALJ was not required to go to the next step in the sequential evaluation process and apply the grids.  20 C.F.R. §404.1520(f)

A review of the ALJ's decision reveals that he properly considered the Plaintiff's impairments as a whole in rendering his findings. [Tr. 18-24].  The ALJ found that the Plaintiff's had severe impairments and that she did not have an impairment or combination of impairments that met or equaled a listed impairment, which provides sufficient evidence that the ALJ considered the combined effect of the Plaintiff's impairments. [Tr. 22].  *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002).

## IV.    CONCLUSION

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence.  Judgment should be entered pursuant to sentence four of 42 U.S.C. §405(g) **AFFIRMING** the decision of the Commissioner.

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this 26th day of September 2008.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record